# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **ALLIED ERECTING AND** | ) | **CASE NO.  4:06cv509** |
| **DISMANTLING CO., INC.,** | ) | |
| | ) | **JUDGE PETER C. ECONOMUS** |
| **PLAINTIFF,** | ) | |
| | ) | |
| **V.** | ) | |
| | ) | |
| | ) | |
| **OHIO CENTRAL RAILROAD, INC.,** | ) | **MEMORANDUM OPINION** |
| *et al.* | ) | **AND ORDER** |
| | ) | |
| **DEFENDANTS.** | ) | |

This matter is before the Court upon plaintiffs, Allied Erecting and Dismantling Company, Inc. and Allied Industrial Development's, motion to remand (Dkt. # 15) and brief in support (Dkt. # 16).  Also before the Court are defendants, Ohio Central Railroad, Inc., *et al.*'s,  memorandum in opposition to plaintiffs' motion to remand (Dkt. # 18) and plaintiffs' reply brief in support of motion to remand (Dkt. # 19).  For the reasons discussed below, the motion to remand is **GRANTED**.

## I.    FACTUAL BACKGROUND

The Plaintiffs, Allied Erecting and Dismantling Company, Inc. and Allied Industrial Development, ("Plaintiffs"), own property situated at 2100 Poland Avenue, Youngstown, Mahoning County, Ohio. (Dkt. # 1).  Defendants Ohio Central, *et al.,*

("Defendants"), are purportedly the successors in interest to various easements assigned by the Plaintiffs.  A brief review of this case is necessary.

On May 6, 1993, Plaintiffs entered into an easement agreement ("LTV Easement Agreement") with LTV Steel Company, Inc., ("LTV"), granting LTV a perpetual, non-exclusive railroad easement.  (Dkt. # 1, First Amended Compl. ¶ 10).  The LTV Easement Agreement authorized LTV to "operate, use, maintain, repair, restore, replace, and abandon (at LTV's sole cost and expense) the railroad tracks and related equipment" for the intended purpose of running rail cars on certain tracks located on Plaintiffs' property.  (Dkt. # 1, First Amended Compl. ¶ 11).  LTV conveyed all of its right, title and interest in the LTV Easement Agreement to Defendants.  (Dkt. # 1, First Amended Compl. ¶ 12).[1]

On September 17, 1993, Plaintiffs granted, *inter alia*, a perpetual non-exclusive easement ("PLE Easement Agreement") to Pittsburgh Lake Erie Properties, Inc. ("PLE").  (Dkt. # 1, First Amended Compl. ¶ 13).  Defendants are assignees and/or successors-in-interest of certain limited railroad easement rights arising from the PLE Easement Agreement.  (Dkt. # 1, First Amended Compl. ¶ 14).

---

[1]  Defendant The Ohio Central Railroad System is an unincorporated and unregistered association of ten railroads that operate throughout East Central Ohio, Northeastern Ohio, and Pittsburgh, Pennsylvania.  (Dkt. # 1, First Amended Compl. ¶ 3).  Plaintiffs' amended complaint also names as defendants the Ohio & Pennsylvania Railroad Company, the Warren & Trumbull Railroad Company, Youngstown & Austintown Railroad, Inc., the Youngstown Belt Railroad Company, and the Mahoning Valley Railway Company included among the ten railroads within the Ohio Central Railroad System.  (Dkt. # 1, First Amended Compl. ¶¶ 5-9).

2

On January 17, 2006, Plaintiffs filed a complaint for monetary damages and declaratory as well as injunctive relief in the Mahoning County Court of Common Pleas. On February 6, 2006, Plaintiffs filed their First Amended Complaint, alleging misuse, abuse, overburdening of nonexclusive railroad easements, ("Count One"); unreasonable use of easements, ("Count Two"); unjust enrichment and deprivation of property, ("Count Three"); and trespass ("Count Four").  (Dkt. # 1, First Amended Compl.).

In Count One, Plaintiffs aver that Defendants have "continually held, stored, and/or otherwise impermissibly stopped rail cars on various rail lines" on Plaintiffs' property.  (Dkt. # 1, First Amended Compl. ¶ 22).  Plaintiffs contend that Defendants' "misuse, abuse, and overburdening of the easement rights" have caused "significant adverse impacts on [Plaintiffs'] ability to utilize its own rail lines, as well as to its operations and its intended development plans for the property."  (Dkt. # 1, First Amended Compl. ¶ 22).  In Count Two of their amended complaint, Plaintiffs contend that Defendants have "unreasonably held, stored and/or otherwise impermissibly stopped rail cars on the railroad tracks on the [Plaintiffs'] property in violation of the LTV Easement Agreement and the [PLE] Easement Agreement."  (Dkt. # 1, First Amended Compl. ¶ 26).  Plaintiffs' further allege, in Count Three, that Defendants have stopped and/or stored rail cars on the Plaintiff's property, thus damaging Plaintiff's property and depriving Plaintiff of the "beneficial use and enjoyment of its own property."  (Dkt. # 1, First Amended Compl. ¶¶ 30-31).  Finally, Count Four of the complaint alleges that

3

Defendants have "continually entered upon the [Plaintiffs' property] for the purpose of holding, storing and/or impermissibly stopping rail cars on rail lines . . . including rail lines over which it has no easement rights" as well as storing "hazardous, toxic and/or regulated substances and materials" on the property, thus constituting a trespass on the property.  (Dkt. # 1, First Amended Compl. ¶¶ 35-36).

Defendants removed this action to this Court, contending that Plaintiffs' claims are preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C § 10101, *et seq*.  Plaintiffs thereafter filed the instant motion to remand.  In their motion, Plaintiffs argue that remand is proper because (1) no federal question appears on the fact of the well-pleaded complaint; (2) Defendants have not established that the ICCTA completely preempts Plaintiffs' state law claims; and (3) this Court lacks removal jurisdiction over the determination of the preemptive effect of Section 10501(b) of the ICCTA.

## II.    LAW AND ANALYSIS

"The district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" Exxon Mobil Corp. v. Allapattah Servs., 125 S.Ct. 2611, 2616-17, 162 L. Ed. 2d 502 (2005) (quoting Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)). The removal statutes evince the intent of Congress to grant "a limited class of state-court defendants" the right to a federal forum.  Martin v. Franklin Capital Corp., 126 S. Ct. 704, 711, 163 L. Ed. 2d 547 (2005).  In this vein, the removal statues are to be narrowly construed.  See First Nat'l Bank of Pulaski v. Curry, 301 F.3d 456 (6th Cir. 2002).

4

Indeed, the district court must remand a case if at any time prior to final judgment it appears that the case was removed improvidently and without jurisdiction. See 28 U.S.C. § 1447(c). Remand from district court to state court is appropriate in two instances: (1) the absence of subject matter jurisdiction; or (2) a defect in the removal procedures. See Page v. City of Southfield, 45 F.3d 128, 131 (6th Cir. 1995).

Defendants may remove an action to federal court pursuant to 28 U.S.C. § 1441 if the plaintiff's "well-pleaded complaint" presents a federal question, such as a federal cause of action, or demonstrates a diversity of citizenship between the parties. See 28 U.S.C. § 1441(a); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). In the instant mater, Defendants must demonstrate that this Court maintains original or diversity jurisdiction over the Complaint in order to prevent a remand of the action to the state forum. See Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97-98 (1921) (establishing that the party seeking removal bears the burden of demonstrating its right thereto); Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 871 (6th Cir. 2000) (same). In order to satisfy this burden, Defendant invokes federal question jurisdiction, alleging that Section 10501(b) of the ICCTA preempts the Plaintiffs' claims. (Dkt. # 1, Notice of Removal).

*Preemption by ICCTA*

Defendants contend that the ICCTA preempts Plaintiffs' common law claims because "in enacting the ICCTA, Congress intended to occupy completely the field of state economic regulation of railroads." (Dkt. # 1, Notice of Removal ¶ 3)(citations omitted). Defendants specifically state that all of the claims in the amended complaint

arise from their use of rail lines in connection with their interstate railroad operations, and are based on the alleged misuse of railroad and property rights.  (Dkt. # 18).

The section of the ICCTA assigning jurisdiction over the regulation of rail transportation to the Surface Transportation Board is 49 U.S.C. § 10501(b).  That section provides:

> (b) The jurisdiction of the Board over --
>
>> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange and other operating rules), practices, routes, services, and facilities of such carriers; and
>>
>> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intend to be located, entirely in one State,
>
> is exclusive.  Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).

The preemptive force of the ICCTA is subject to dispute among the federal courts; some have broadly construed its application.  See City of Auburn v. United States, 154 F.3d 1025, 1029-103 (9th Cir.1998); Wis. Cent. LTD. v. City of Marshfield, 160 F.Supp.2d 1009, 1013 (W.D.Wis.2000).  This Court has stated that the "ICCTA also evidences the intent of Congress to preempt the field in which state law previously operated with respect to railroads."  Columbiana County Port Auth. V. Boardman Twp. Park Dist., 154 F.Supp.2d 1165, 1180 (N.D.OH 2001)(emphasis added).  Others courts

have curtailed its force.  See Iowa, Chi. & E. R.R. v. Wash. County, 584 F.3d 557, 561

(8th Cir.2004); Fla. E. Coast R.R. Co. v. City of West Palm Beach, 266 F.3d 1324, 1331

(11th Cir.2001); Pejepscot Industrial Park, Inc., v. Maine Central Railroad, 297

F.Supp.2d 326, 333 (D. Maine 2003).

For its part, the Surface Transportation Board ("STB")[2] has stated that "we do not

believe that all state and local regulations that affect railroads are necessarily preempted

by 49 U.S.C. § 10501(b).  Rather, we believe that state and local regulation is

permissible when it does not interfere with interstate rail operations."  Township of

Woodbridge v. Consolidated Rail Corp., STB Dkt. No. 42053, 2000 WL 1771044 at 3;

see also Maumee & W. R.R. Corp. and RMW Ventures, LLC, STB Dkt. No. 34354,

2004 WL 395835 at 1, (finding "Federal preemption does not completely remove any

ability of state or local authorities to take action that affects railroad property.").

Indeed, it has been held that "a rail carrier that voluntarily enters into an

otherwise valid and enforceable agreement cannot use the preemptive effect of section

10501(b) to shield it from its own commitments."  Pejepscot, 297 at 333.  This is

particularly true where the enforcement of the agreement does not unreasonably interfere

with interstate commerce.  Id.

Plaintiffs argue that because their common law claims arise out of "voluntary

contractual obligations bargained for in an arms-length transaction," the ICCTA does

not preempt their claims.  In their reply memorandum, Plaintiffs state that, rather than

seeking to restrict Defendants' use of rail lines and interstate railroad operations, they

---

[2]        The STB is the administrative body that governs railroad operations.

instead "take[] issue with only a specific localized act: [Defendants'] impermissible misuse and abuse of an express easement."  (Dkt. # 19).  In short, Plaintiffs seek to refrain Defendants from parking and storing rail cars on its rail lines in violation of the terms of the LTV and PLE Easement Agreements.

Defendants argue that the ICCTA's preemption clause applies to claims brought by property owners based on the alleged misuse of rails.  In asserting that Plaintiffs' claims will directly impact or interfere with Defendants' railroad operations, Defendants attempt to construe Plaintiffs' state law claims as "clearly federal in nature," contending that said claims "seek judicial regulation of [Defendants'] use of rail lines." (Dkt. # 18).  However, aside from these conclusory statements, Defendants have not demonstrated to this Court that the enforcement of the LTV and PLE Easement Agreements would impermissibly interfere with interstate rail operations.  See Woodbridge, STB Dkt. No. 42053, 2000 WL 1771044 at *3, ("[V]oluntary agreements must be seen as reflecting [defendant's] own determination and admission that the agreements would not unreasonably interfere interstate commerce.").

*Removal Jurisdiction*

The Court need not resolve this dispute, however, as removal was inappropriate in this case.[3]  It is well-settled that "[r]emoval and preemption are two distinct concepts.

---

[3]   This Court has previously determined that where removal was improper in a case involving claims which may be preempted, the district court should remand to the state to determine the preemption issue.  See Railroad Ventures, Inc. v. Columbiana County Port Authority, Case No. 4:02CV1080; see also Caterpillar, 482 U.S. at 2433 n. 3, ("We intimate no view on the merits of this or any of the pre-emption arguments discussed above.  These are questions that must be addressed in the first instance by the state court in which respondents filed their claims.")

The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted . . . does not establish that they are removable to federal court." Warner v. Ford Motor Co., 46 F.3d 531, 535 (6th Cir.1995)(quoting Caterpillar, 482 U.S. at 398)(internal quotations omitted).

"[A] case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, 482 U.S. at 393 (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 2 (1983)).  In most cases, federal preemption is "ordinarily a federal defense to the plaintiff's suit." Warner, 46 F.3d at 533.  As such, "it does not appear on the face of a well-pleaded complaint, and, therefore does not authorize removal to federal court." Id.

There are instances where Congress intends the preemptive force of a statute to be so extraordinary that it completely preempts an area of state law, "any claim purportedly on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, Inc., 482 U.S. at 393.

Nevertheless, Courts have very narrowly construed the applicability of complete preemption.  The United States Court of Appeals for the Sixth Circuit has noted that only four statutes  evince Congressional intent to completely preempt a field:  § 301 of the LMRA; § 502(a)(1)(B) of ERISA; §§ 85 and 86 of the National Bank Act; and § 301(a) of the Copyright Act.  See AmSouth Bank v. Dale, 386 F.3d 763, 776 (6th Cir.2004); see also Ritchie v. Williams, 395 F.3d 283, 286-87 (6th Cir.2005).  Here, section 10501(b) does not completely preempt all regulations that affect railroads, but rather,

only those that interfere with interstate rail operations.  See Woodbridge, STB Dkt. No. 42053, 2000 WL 1771044.  As such, Defendants' preemption arguments act as a federal defense to Plaintiffs' amended complaint, but do not create a basis for removal to this Court.

## III.    CONCLUSION

Accordingly, the Court hereby **GRANTS** Plaintiff's motion to remand (Dkt. # 16) and orders this matter **REMANDED** to the Court of Common Pleas, Mahoning County, Ohio.

**IT IS SO ORDERED.**

**/ s / Peter C. Economus  - October 11, 2006**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**